UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

R2B2, LLC,

                    Plaintiff,

        v.

TRUCK INSURANCE EXCHANGE,

                    Defendant.

CASE NO. C21-5585 BHS

ORDER DENYING MOTION TO
REMAND

THIS MATTER is before the Court on Plaintiff R2B2 LLC's Motion to Remand,
Dkt. 21. R2B2 is an Olympia, Washington dental practice that purchased an "all risk"
Businessowners Special Property Insurance Policy from Defendant Truck Insurance
Exchange ("TIE"). R2B2 made a claim under the policy for lost business income caused
by COVID-19 and the Governor of Washington's responsive Proclamations limiting
various business and social activities. Dkt. 1-1. It alleges its "property has sustained
direct physical loss and/or damages related to COVID-19 and/or the proclamations and
orders." *Id.* at 10. TIE denied the claim. *Id*.

R2B2 sued TIE in Thurston County Superior Court in January 2021, on behalf of
itself and a putative class of similar TIE insureds, seeking declaratory judgments that the

1    business losses resulting from the pandemic and the State's response to it were covered

2    under the TIE policies, and that TIE was obligated to timely pay the claims. It also seeks

3    attorneys' fees, costs, and interest. *Id*. at 17–18. R2B2's Complaint alleges that TIE

4    denied "*hundreds*" of similar claims for similar losses under similar policies, and that the

5    "aggregate damages sustained by the classes are likely to be in the *millions* of dollars."

6    Dkt. 1-1 at 13, 16 (emphasis added).

7         TIE removed the case to this Court almost eight months later, on August 13, 2021.

8    Dkt. 1. It asserted that the amount in controversy was not ascertainable from the face of

9    the Complaint, and that it had propounded discovery seeking to determine whether the

10   case was removable under the Class Action Fairness Act ("CAFA"), which makes a class

11   action removable when the amount in controversy exceeds $5 million and the class

12   contains more than 100 members. *See* 28 U.S.C. § 1332(d)(2). TIE's Notice of Removal

13   asserts (and demonstrates) that R2B2 objected to its interrogatories seeking information

14   about the amount in controversy. Dkt. 1 at 4–5 (citing Dkt. 1-7). TIE also asserts that it

15   first learned that the claimed damages exceeded the $5 million jurisdictional limit on July

16   16, 2021, when R2B2 first produced confidential documents[1] reflecting that it had

17   obtained "PPP loans" based on its claimed business losses.

18

19

---

20        [1] Based on this information, TIE the same day removed a case asserting what it claims
     are essentially identical class allegations under similar policies, *54-40 Brewing Company LLC v.*
21   *Truck Insurance Exchange*, No. 21-cv-5586 BHS, at Dkt. 1. TIE has moved to consolidate these
     cases, Dkt. 23, and Plaintiff 54-40 has similarly moved to remand that case. Those Motions will
22   be addressed in separate Orders.

1      TIE asserts that these records reflect that R2B2 obtained a $236,200 PPP loan.

2   Relying on R2B2's allegation that other, similarly situated TIE insureds suffered

3   "similar" covered losses, TIE calculated that if each class member had $236,200 in

4   claims, the $5 million threshold would be met even if there were only 25 class

5   members—far less than the "hundreds" alleged in the complaint, even excluding the

6   class's *Olympic Steamship* attorneys' fee claim.[2] Dkt. 1 at 8. TIE asserts that it timely

7   removed the action within 30 days of receipt of the "papers" demonstrating that the

8   jurisdictional amount was at issue. *Id.* at 5.

9      R2B2 seeks remand, arguing that TIE's removal information was insufficient and

10  the removal was untimely. Dkt. 21 at 9. It argues the removal was untimely because TIE

11  had access to the information upon which the removal is based back in March, and

12  because TIE, not R2B2, had access to TIE's COVID-19-related business interruption

13  claims records. *Id.* at 12. It accuses TIE of "forum shopping" to take advantage of

14  favorable recent federal rulings on such claims, and to avoid potentially applicable

15  adverse state court rulings. *Id.* at 5–7. R2B2 also argues that TIE has not yet established

16  that the amount in controversy is met, because it baselessly assumes that other class

17  members' losses are similar to R2B2's. R2B2's Motion to Remand thus raises two issues:

18  whether TIE has established that the amount in controversy is more than $5 million and,

19  if so, when TIE first learned that that was the case.

20      These issues are addressed in turn.

21  _____

22      [2] Nevertheless, the Court can take judicial notice that a class action attorneys' fee claim is
    likely to exceed 20% of any damage award.

# I.   DISCUSSION

Putative class actions are removable under CAFA when the aggregate amount in controversy exceeds $5,000,000 for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). There is no presumption against removal for cases removed under CAFA. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("No antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate adjudication of certain class actions in federal court."). Under CAFA, the removing defendant retains the obligation to demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is met in order to sustain its removal in the face of a motion to remand. *Rodriquez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 981 (9th Cir. 2013).

Though the burden remains with the defendant, it is not a daunting one. Under this standard, a removing defendant is not obligated to completely "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (citing *McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky. 1994)). The appropriate measure of the amount in controversy must be based on reasonable assumption. "A removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation." *Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB (RBB), 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015) (internal quotation omitted).

Under 28 U.S.C. § 1446(b), a case may be removed in two different 30-day windows. The first requires a party to file the notice of removal within thirty days of

receipt of the initial pleading or summons. 28 U.S.C. § 1446(b)(1). However, "if no ground for removal is evident in the initial pleading, the second thirty-day window to remove an action commences when the defendant receives 'an amended pleading, motion, order, *or other paper*' from which it can be ascertained from the face of the document that removal is proper." *Cleveland v. W. Ridge Acad.*, No. 1:14-CV-01825-SKO, 2015 WL 164592, at *3 (E.D. Cal. Jan. 13, 2015) (citing 28 U.S.C. § 1446(b)(3)) (emphasis added). Discovery responses qualify as "other paper" triggering the second 30-day window, *see Grazia v. Safeco Ins. Co. of Ill.*, No. C17-1130-JCC, 2017 WL 4803921, at *2 (W.D. Wash. Oct. 25, 2017), as do settlement demands, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).

**A.    R2B2's "forum shopping" accusation does not support remand.**

As an initial matter, R2B2's primary claim that TIE's removal reflects impermissible forum shopping is unpersuasive. A plaintiff is free to file in whatever appropriate court it chooses, but if the parties are diverse, or the complaint raises a federal question, the defendant has the right to timely remove the case to federal court. The same is true of CAFA cases. A defendant who removes because it believes a federal forum is advantageous nevertheless has a right to remove if the removal is timely and otherwise warranted. R2B2's apparent refusal to respond to discovery aimed at ascertaining the amount in controversy does not enhance its "gamesmanship" argument. TIE is no more guilty of forum shopping by removing than was R2B2 by filing in state court.

1    Furthermore, and in any event, R2B2's fears about the fate of its claim based on

2    the forum are not well-founded. All of the cases it relies upon to demonstrate the

3    disparity of results in the different forums are recent trial court decisions from

4    Washington State Superior Courts and Federal District Courts, each of which applied

5    Washington law, each of which is persuasive authority, and none of which are binding on

6    this Court. The Court will undoubtedly review those opinions, but the outcome of this

7    case will not turn on the forum; it will turn on the facts and on the applicable Washington

8    law. The Motion to Remand based on TIE's alleged forum shopping or gamesmanship is

9    DENIED.

10   **B.    TIE has met its burden of proving the amount in controversy.**

11   R2B2 asserts both that TIE's removal was too late and, somewhat inconsistently,

12   that TIE has not yet received or provided "paper" establishing that the class meets

13   CAFA's numerosity and amount-in-controversy requirements. Dkts. 21 and 35.

14   TIE's August 13, 2021 Notice of Removal, Dkt. 1, asserted that R2B2 first

15   produced confidential documents demonstrating the amount in controversy on July 16,

16   2021. TIE did not specifically describe the nature of the confidential documents it

17   received, and it did not attach them. Dkt. 1.

18   TIE's response to the Motion to Remand, Dkt. 30, explains the confidential

19   document it received was a "PPP loan forgiveness application" reflecting that R2B2

20   obtained a $236,200 PPP loan in April 2020, to cover payroll expenses for 19 employees

21

22

ORDER - 6

1    through September 2020. *See* Kiess Decl., Dkts. 31 at 2 and 31-3.[3] TIE argues that this

2    information demonstrates that R2B2 claims it lost business income of at least $236,200.

3    Because R2B2 affirmatively alleged that members of the class it seeks to represent

4    incurred "similar" business losses, TIE calculated that if other class insureds did have

5    similar losses, the $5 million amount in controversy would be exceeded if there were

6    only 25 class members—far less than the "hundreds" R2B2 alleged.

7           TIE emphasizes that it received from R2B2 only its PPP loan forgiveness

8    application; it did not receive the loan application itself, or other documentation

9    regarding R2B2's business interruption claim amount. It claims that R2B2 has not

10   responded to all of its discovery on this topic. It argues that the purpose of the PPP

11   program was to mitigate the same business income losses for which R2B2 seeks

12   insurance coverage under its TIE policy. Dkt. 30 at 5 n.3 (citing U.S. Small Business

13   Administration's Paycheck Protection Program, https://www.sba.gov/funding-

14   programs/loans/covid-19-relief-options/paycheck-protection-program). Thus, it argues

15   that the aggregate class damages are more than likely far more than the required $5

16   million, and there is no doubt that the class numbers more than 100 members based on

17   R2B2's own allegations. TIE argues that its assumptions and calculations are plainly

18   reasonable and emphasizes that it need not prove R2B2's damages in order to properly

19   remove a class action under CAFA.

20

21           [3] TIE's Motion to Seal, Dkt. 32, two exhibits to the Kiess Declaration, Dkt. 31, is not
     opposed and it is GRANTED. Exhibits C and E to the Kiess Declaration (currently filed under
22   seal at Dkts. 33 and 34) shall REMAIN under seal.

1        R2B2 disputes that its PPP loan is a reasonable analog for the amount of its

2    business interruption claim under its TIE property insurance policy. Instead, it claims,

3    PPP loans are designed to "incentivize employers to keep employees on the payroll, and

4    they are not a measure of business income loss under an insurance policy." Dkt. 35 at 2.

5        The Court agrees that a PPP loan is at the very least related to the amount of

6    business income lost due to the pandemic, and in the absence of any articulation of a

7    different measure of loss by R2B2, and in the context of a motion to remand, will accept

8    this as a fair proxy for that amount.

9        R2B2 argues that even if its PPP loan is a fair estimate of the amount of its claim,

10   TIE has yet to provide any evidence of "(1) the number of class members; (2) the amount

11   of those class members' losses; or even (3) the nature and size of those class members'

12   businesses." Dkt. 35 at 9. As to the first, R2B2 itself alleged that the class numbered in

13   the "hundreds." That basis for removal was apparent from the face of R2B2's complaint.

14   Dkt. 1-1.

15       R2B2 argues that the aggregate amount of damages suffered by the class is what

16   matters, not the amount of R2B2's damage. Its claim that TIE has not established that

17   other class members suffered similar losses is also resolved by reference to its own

18   complaint, which affirmatively alleges that other class members suffered "similar" losses.

19       The timeliness of TIE's removal—when it "received paper" alerting it to the fact

20   the jurisdictional limit was exceeded—is addressed below. But TIE claims and

21   demonstrates that when it reviewed publicly available PPP loan information in

22   September, it learned that that R2B2 obtained *two* $236,200 PPP loans, for a total of

$472,400. Dkt. 30 at 14 (citing Kiess Decl. at Dkt. 31-7). It also discovered that another insured class member asserting a business interruption claim under a similar TIE policy, 54-40 Brewery (the plaintiff in the overlapping pending class action), also obtained two PPP loans, totaling $249,618. *Id*. Thus, it argues, the claims of just *two* of the "hundreds" of class members place more than $720,000 in controversy. *Id*. R2B2's argument that TIE and the Court have no ability to ascertain the amount of damages suffered and claimed by the other class members ignores its own allegation that the class suffered losses "similar" to those suffered by R2B2, and is not persuasive.

There is no reason to conclude that R2B2's losses are not representative of the class's "similar" losses, or to assume that R2B2 happens to be the TIE insured class member with the highest amount of loss. It may be true that some class members—54-40 Brewery for one—suffered less. But it is also reasonable to conclude that other class members suffered more. Just two of the putative class members obtained more than $720,000 in PPP loans, and the class representative affirmatively alleges that the class includes "hundreds" of similar insureds, suffering similar losses totaling "in the millions." Dkt. 1-1, ¶¶ 59 and 61.

If "hundreds" is construed as only 200 (the lowest number that can accurately fit that description), the jurisdictional amount would be reached if each insured was claiming an average of just $25,000—a fraction of the amount R2B2 (and 54-4 Brewery) obtained in PPP loans—even excluding attorneys' fees. The per-insured claim amount necessary to reach $5 million decreases as the number of class insureds increases. It does not require an unreasonable extrapolation of the named plaintiff's claimed loss to

1   ascertain that the aggregate amount in controversy easily exceeds the jurisdictional

2   minimum.

3       TIE's methodology, assumptions, and calculations are reasonable. The Court

4   concludes TIE has established by a preponderance of the evidence that the amount in

5   controversy in this putative class action exceeds $5 million, which is the CAFA

6   jurisdictional minimum. R2B2's Motion to Remand based on its argument that TIE has

7   failed to establish CAFA's amount in controversy by a preponderance of the evidence is

8   DENIED.

9   **C.    TIE's removal was timely.**

10      R2B2's stronger argument is that if the information upon which TIE based its

11  calculation is sufficient to establish the amount in controversy, its removal was not timely

12  because TIE could and should have discovered that information much earlier than it did.

13      It argues that PPP loans, their recipients, and their amounts are public information,

14  and that if TIE is entitled to rely on them as a proxy for the insured class's claims in this

15  lawsuit, it could and should have done so when the case was filed. In other words, it

16  argues that TIE's claim that it could not have known the amount in controversy until it

17  received R2B2's PPP loan forgiveness application in July 2021 is not accurate; it could

18  have ascertained those facts form the public record.

19      R2B2 also argues that TIE knew (and R2B2 did not know) when it was sued how

20  many of its insureds had filed COVID-19-related business interruption claims under

21  similar property insurance policies. It argues that it sought *from TIE* in March 2021

22  information about the number and value of business interruption claims, and that TIE

ORDER - 10

1    refused to produce that evidence. Dkt. 21 at 4. It argues that R2B2's discovery requests

2    on those topics directly brought this claim information to TIE's attention, and that TIE

3    should have ascertained from those documents that the amount in controversy exceeded

4    $5 million. *Id*. Thus, it claims, TIE should have removed the case (if the claims together

5    exceed $5 million) within 30 days of receiving those discovery requests.

6         TIE responds, correctly, that a defendant has "no duty to look beyond the initial

7    pleading for facts giving rise to removability." Dkt. 30 at 10 (citing *Kuxhausen v. BMW*

8    *Fin. Servs. NA LL*C, 707 F.3d 1136, 1140 (9th Cir. 2013); *Whitaker v. Am. Telecasting,*

9    *Inc.*, 261 F.3d 196, 205–06 (2d Cir. 2001)). For this reason, the fact that it could have

10   ascertained the amount in controversy by mining either the public record or its own

11   claims files does not mean that the lawsuit itself or plaintiff's subsequent discovery

12   requests put it on notice of the amount of the class's aggregate damage claim.

13        The fact that a defendant *may* remove based on its own information does not

14   require it to do the sort of investigation that R2B2 claims TIE should have done. *See Roth*

15   *v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1126 (9th Cir. 2013) ("a defendant who has

16   not lost the right to remove because of a failure to timely file a notice of removal under

17   § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own

18   investigation, that a case is removable.").

19        R2B2 essentially argues that TIE was obligated to do more than seek discovery

20   from the plaintiff; it was required to also research the amount in controversy in its own

21   records, and the public record, in order to proactively locate "paper" from which it could

22   ascertain the amount in controversy, and to do so within 30 days of receiving either the

1   complaint or R2B2's discovery requests. But it cites no case for that proposition, and its

2   own articulation of the well-settled rule demonstrates that a defendant's "second" 30-day

3   removal window is opened only when a defendant "*receives* 'a copy of an amended

4   pleading, motion, order, or other paper' from which removability may first be

5   ascertained." Dkt. 21 at 9 (quoting 28 U.S.C. § 1446(b)) (emphasis added). Any other

6   rule would be unworkable and would lead to even more litigation over removal and

7   remand.

8        TIE's receipt of "paper" from R2B2 leading it to plausibly conclude that the

9   amount in controversy was not just "millions," but likely far more than $5 million,

10  triggered the second § 1446(b) 30-day window for removal. Its removal less than 30 days

11  later was timely.

12       R2B2's Motion to Remand and for attorneys' fees, Dkt. 21, is **DENIED**. The

13  Motion to Seal, Dkt. 32, is **GRANTED**.

14       IT IS SO ORDERED.

15       Dated this 21st day of December, 2021.

16

17

18       _____
         BENJAMIN H. SETTLE
         United States District Judge

19

20

21

22